**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| NORTH CAROLINA GREEN PARTY, ANTHONY NDEGE, MICHAEL TRUDEAU, MATTHEW HOH, SAMANTHA WORRELL, SAMANTHA SPENCE, K. RYAN PARKER and AARON MOHAMMED, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No. _____** |
| v. | ) ) | **Judge:** |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, | ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF

1.      Plaintiff North Carolina Green Party ("NCGP") timely complied with all requirements under state law to qualify as a new political party and place its candidates on North Carolina's November 8, 2022 general election ballot.  Nevertheless, by a divided 3-2 vote, Defendant North Carolina State Board of Elections ("NCSBE") declined to certify NCGP as a new political party.  NCSBE cited no legal authority for its action.  NCSBE claims to be investigating unspecified allegations of "irregularities" in NCGP's petitions, but NCSBE concedes that NCGP submitted over 2,000 more valid signatures than required under state law.  Moreover, NCSBE has not presented NCGP with evidence of the purported "irregularities" in its petitions, nor has it given NCGP any opportunity to defend the validity of the signatures on its petitions.

2.      Plaintiffs are voters, candidates, petition circulators and petition signers who supported NCGP's effort to become a ballot-qualified party in 2022.  Plaintiffs want to vote for NCGP's nominees, including Plaintiff Hoh and Plaintiff Trudeau, in the November 2022 general

election. NCSBE's failure to certify NCGP as a new party makes it impossible for them to do so. Plaintiffs therefore bring this action against NCSBE for the violation of their rights to cast their votes effectively, to speak and associate for political purposes, to grow and develop their political party, to petition, and of their right to due process, as guaranteed by the First and Fourteenth Amendments. Plaintiffs respectfully request that the Court declare NCSBE's failure to certify NCGP unconstitutional and enter an order directing NCSBE to certify NCGP and place its nominees on North Carolina's 2022 general election ballot.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331, because Plaintiffs' claims arise under the First and Fourteenth Amendments to the United States Constitution.

4.      This Court has personal jurisdiction over NCSBE because NCSBE is an agency of the State of North Carolina and conducts its business in North Carolina.

5.      Venue is proper in this Court because all Plaintiffs are residents of North Carolina, Defendant's primary office is in Raleigh and a substantial part of the events giving rise to this action occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(1),(2).

## PARTIES

6.      The North Carolina Green Party is the North Carolina state affiliate of the Green Party of the United States. NCGP seeks to elect candidates to all levels of public office in North Carolina, but it is presently unable to place its nominees on the ballot because NCSBE declined to certify NCGP as a political party. NCGP is injured by NCSBE's action, which prevents it from participating in North Carolina's electoral process and hinders its ability to associate with its supporters, to engage in political speech and build support among the electorate, and to grow and

2

develop as a political party. NCGP maintains a business address in Chatham County, North Carolina.

7.      Plaintiff Anthony Ndege is Co-Chair of NCGP. He resides in Forsyth County, North Carolina, where he is a registered voter and intends to remain and vote in future elections. Ndege seeks to campaign for, speak and associate with, and vote for NCGP's candidates. Ndege also circulated petitions and signed a petition to qualify NCGP as a political party in 2022. Ndege is harmed by NCSBE's failure to certify NCGP, which prevents him from campaigning for, associating with and voting for NCGP's candidates, prevents NCGP from participating in North Carolina's electoral process, and hinders NCGP's ability to grow and develop as a political party.

8.      Plaintiff Michael Trudeau is Secretary of NCGP and NCGP's nominee for State Senate, District 16. He resides in Wake County, North Carolina, where he is a registered voter and intends to remain and vote in future elections. Trudeau seeks to campaign for, speak and associate with, and vote for NCGP's candidates. Trudeau also circulated petitions and signed a petition to qualify NCGP as a political party in 2022. Trudeau is harmed by NCSBE's failure to certify NCGP, which prevents him from campaigning for, associating with and voting for NCGP's candidates, including himself, and prevents NCGP from participating in North Carolina's electoral process and hinders its ability to grow and develop as a political party.

9.      Plaintiff Matthew Hoh is NCGP's nominee for United States Senate. He resides in Wake County, North Carolina, where he is a registered voter and intends to remain and vote in future elections. Hoh seeks to campaign for, speak and associate with, and vote for NCGP's candidates. Hoh also circulated petitions and signed a petition to qualify NCGP as a political party in 2022. Hoh is harmed by NCSBE's failure to certify NCGP, which prevents him from campaigning for, associating with and voting for NCGP's candidates, including himself, and

3

prevents NCGP from participating in North Carolina's electoral process and hinders its ability to grow and develop as a political party.

10.    Plaintiff Samantha Worrell is a member of NCGP.  She resides in Pender County, North Carolina, where she is a registered voter and intends to remain and vote in future elections. Worrell seeks to campaign for, speak and associate with, and vote for NCGP's candidates.  Worrell circulated petitions and signed a petition to qualify NCGP as a political party in 2022.  Worrell is harmed by NCSBE's failure to certify NCGP, which prevents her from campaigning for, associating with and voting for NCGP's candidates, and prevents NCGP from participating in North Carolina's electoral process and hinders its ability to grow and develop as a political party.

11.    Plaintiff Samantha Spence is a member of NCGP.  She resides in Stanly County, North Carolina, where she is a registered voter and intends to remain and vote in future elections. Spence seeks to campaign for, speak and associate with, and vote for NCGP's candidates.  Spence circulated petitions and signed a petition to qualify NCGP as a political party in 2022.  Spence is harmed by NCSBE's failure to certify NCGP, which prevents her from campaigning for, associating with and voting for NCGP's candidates, and prevents NCGP from participating in North Carolina's electoral process and hinders its ability to grow and develop as a political party.

12.    Plaintiff K. Ryan Parker is a member of the Democratic Socialists of America North Carolina Triangle Chapter and as a registered voter supports NCGP's U.S. Senate candidate Matthew Hoh.  Parker resides in Wake County, North Carolina, where he is a registered voter and intends to remain and vote in future elections.  Parker seeks to campaign for, speak and associate with, and vote for NCGP's candidates, including Hoh.  Parker signed a petition to qualify NCGP as a political party in 2022.  Parker is harmed by NCSBE's failure to certify NCGP, which prevents him from campaigning for, associating with and voting for NCGP's candidates, and prevents

4

NCGP from participating in North Carolina's electoral process and hinders its ability to grow and develop as a political party.

13. Plaintiff Aaron Mohammed is a member of the People's Party of North Carolina who supports NCGP's U.S. Senate candidate Matthew Hoh. Mohammed resides in Guilford County, North Carolina, where he is a registered voter and intends to remain and vote in future elections. Mohammed seeks to campaign for, speak and associate with, and vote for NCGP's candidates, including Hoh. Mohammed signed a petition to qualify NCGP as a political party in 2022 and donated to Hoh's campaign (the "Hoh Campaign"). Mohammed is harmed by NCSBE's failure to certify NCGP, which prevents him from campaigning for, associating with and voting for NCGP's candidates, and prevents NCGP from participating in North Carolina's electoral process and hinders its ability to grow and develop as a political party.

14. Defendant North Carolina State Board of Elections is an agency of the State of North Carolina charged with the administration of the elections process, including the petitioning process by which a new political party is formed and qualifies to place its nominees on North Carolina's general election ballot. NCSBE is required under state law to determine the sufficiency of a new party's petitions and immediately notify the party's state chair of its determination. On June 30, 2022, a divided NCSBE voted on party lines not to certify NCGP's petitions. NCSBE's office address is Dobbs Building, Third Floor, 430 N. Salisbury St., Raleigh NC 27603-1362.

## FACTUAL ALLEGATIONS

### I. Relevant Provisions of the North Carolina Election Code

15. Under North Carolina law, a group of voters may form a new political party and qualify it to place its nominees on the general election ballot by submitting petitions signed by one-quarter of one percent (0.25%) of the total number of voters who voted in the most recent

5

general election for Governor.  *See* N.C. GEN. STAT. § 163-96(a)(2).[1]  The petitions must be signed

by at least 200 registered voters in each of three congressional districts in North Carolina.  *See id.*

The petitions must be submitted to NCSBE before noon on the first day of June of the election

year in which the party seeks to participate.  *See id.*

16.     Voters who wish to form a new party pursuant to § 163-96 must first submit their

petitions to the county board of elections in the county in which the signatures were obtained.  *See*

§ 163-96(c).  The petitions must be submitted to the county boards of elections no later than 5:00

PM on the fifteenth day preceding the date on which they must be filed with NCSBE under § 163-

96(a)(2).  *See id.*  The chair of each county board of elections must examine the signatures and

certify the number of signatures signed by voters who are qualified and registered to vote in the

county.  *See id*.  Each county board of elections must complete this validation process and return

the petitions to the person who submitted them within two weeks.  *See id.*

17.     When voters who seek to form a new party submit their validated petitions to

NCSBE on June 1st, NCSBE "shall forthwith determine the sufficiency of petitions filed with it

and shall immediately communicate its determination" to the state chair of the new party.  *See* §

163-96(a)(2).

18.     A new party that qualifies under § 163-96 "shall be entitled to have the names of

its candidates for national, State, congressional, and local offices printed on the official ballots…"

in the first general election following the date on which it qualified, provided that the candidates

pay the required filing fee or comply with an alternative procedure.  § 163-98.  The party must

select its candidates by party convention.  *See id*.  After the convention is adjourned, but not later

than July 1st, the convention president must certify to NCSBE the candidates that it nominated at

---

[1] Hereinafter, all statutory citations are to the General Statutes of North Carolina unless otherwise indicated.

the convention. *See id*. The candidates also must also submit an application to change party affiliation to the new party at or before the time they are certified. *See id.*

## II. NCGP Timely Complied With All State Law Requirements to Qualify as a New Political Party and Place Its Nominees on North Carolina's 2022 General Election Ballot

19. NCGP conducted a petition drive pursuant to § 163-96 to qualify as a new party and place its nominees on North Carolina's 2022 general election ballot. The petition drive was conducted almost entirely by party members and supporters and by voters who support Plaintiff Hoh's campaign for United States Senate.

20. Under § 163-96(a)(2), NCGP was required to submit petitions with 13,865 valid signatures. According to NCSBE, NCGP timely submitted petitions containing a total of 22,530 signatures to county boards of elections. *See* North Carolina State Board of Elections, *Petition Search*, available at https://vt.ncsbe.gov/PetLkup/PetitionResult/?CountyID=0&PetitionName=NORTH%20CAROLINA%20GREEN%20PARTY (accessed July 11, 2022).

21. Several county boards of election did not comply with their statutory duty to validate and return the petitions to NGCP "within two weeks from the date" they were submitted. *See* § 163-96(c)(3). Nevertheless, on May 31, 2022, the deadline by which the county boards of elections were required to complete the validation process, NCSBE's website indicated that the county boards had validated a total of 16,117 signatures on the petitions. *See id*. The validated signatures included at least 200 signatures from each of three congressional districts in North Carolina. *See* § 163-96(a)(2).

22. At 10:00 A.M. on June 1, 2022, Plaintiff Ndege and Plaintiff Trudeau delivered NCGP's validated petitions to NCSBE, as required by § 163-96(a)(2). NCGP had previously

requested to meet with NCSBE on that day, to jointly review the petitions when they were submitted. NCGP was advised that NCSBE official Tiffany Holden would be there to meet them, but when Plaintiff Ndege and Plaintiff Trudeau delivered the petitions, Ms. Holden declined to meet with them on behalf of NCSBE, stating that they had not scheduled a meeting.

23. Thereafter, NCSBE notified NCGP that it would not consider whether to determine the sufficiency of NCGP's petitions, as required by § 163-96(a)(2), until June 30, 2022. Because NCGP was required to nominate its candidates at convention and certify them to NCSBE no later than July 1, 2022, *see* § 163-98, this would leave NCGP less than one day to hold a convention and certify its candidates after NCSBE made its determination.

24. As described *infra* at Part IV, on June 30, 2022, a divided NCSBE voted not to certify NCGP as a new party, despite the fact that as of that date county boards of elections had validated 15,953 signatures on NCGP's petitions – or 2,088 more valid signatures than the 13,865 required under § 163-96(a)(2). The two Republican NCSBE members voted in favor of certification, but all three Democratic NCSBE members voted against certification.

25. Pursuant to § 163-98, NCGP held its convention on June 30, 2022. The party duly selected Plaintiff Hoh and Plaintiff Trudeau as its candidates for U.S. Senate and State Senate (District 16), respectively, as required by § 163-98.

26. On July 1, 2022, Plaintiff Hoh and Plaintiff Trudeau each submitted their applications to change party affiliation to the Wake County Board of Elections pursuant to § 163-98. Later the same day, Plaintiff Ndege certified Plaintiff Hoh and Plaintiff Trudeau as NCGP's candidates for their respective offices to NCSBE, as required by § 163-98. Plaintiff Trudeau also submitted a Notice of Candidacy form and check for his candidate filing fees to both the Wake County Board of Elections and NCSBE. *See* § 163-98.

8

27.     On July 13, 2022, in accordance with guidance received from NCSBE's counsel, Plaintiff Trudeau submitted to the Wake County Board of Elections a Notice of Candidacy form tailored to new party candidates, which he and Plaintiff Hoh received from NCSBE's counsel on July 12, 2022.  Plaintiff Hoh submitted the form to NCSBE on July 13, 2022, and attempted to submit a check for his candidate filing fee, but NCSBE would not accept it.  *See* § 163-98.

28.     NCGP and its candidates thus timely complied with all state law requirements to form a new party pursuant to § 163-96 and place its nominees on North Carolina's 2022 general election ballot pursuant to § 163-98.

### III.     Democratic Party Operatives' Interference With NCGP's Petition Drive

29.     On June 7, 2022, Elizabeth Poston, an attorney with Elias Law Group, submitted a public records request to NCSBE that sought a wide range of "information and data related to the Green Party's petition to become a recognized political party," including copies of petitions and "[a]ny and all correspondence" relating to NCGP's petition to become a new political party. Attorney Poston submitted another request to NCSBE seeking additional materials relating to NCGP's petition drive on June 17, 2022.

30.     The language in Attorney Poston's public records requests contains substantial portions that are identical, verbatim, to language contained in a public records request submitted to NCSBE on June 3, 2022 by Amelia Brown.  On information and belief, Ms. Brown is an intern in the office of North Carolina Governor Roy Cooper, a Democrat.  *See, e.g.*, Amelia Brown, J.D. Candidate at UNC School of Law, *available at* linkedin.com/in/amelia-brown-5550b8133 (identifying Amelia Brown as "Legal Intern, North Carolina Office of the Governor") (accessed July 13, 2022).

31.     On its website, Elias Law Group identifies itself as "the nation's largest law firm focused on representing the Democratic Party, Democratic campaigns, nonprofit organizations, and individuals committed to advancing and protecting civil rights." *See* Elias Law Group, *Elias Law Group Begins Operations*, available at https://www.elias.law/elias-law-group-begins-operations (accessed July 11, 2022).

32.     On or about June 22, 2022, NCGP petition signers began receiving multiple phone calls and text messages daily from unknown individuals who requested that they remove their names from the NCGP petitions.  The individuals stated that they were making the request because the Green Party "takes votes" from Democrats.  In some instances, the individuals declined to identify themselves; in others, they stated that they were calling on behalf of the Democratic Senatorial Campaign Committee ("DSCC"); and in still other instances the individuals fraudulently claimed to be representatives of the Green Party.

33.     On June 22, 2022, Drew Hicks received a call from 919-887-7690.  The caller asked him to remove his name from NCGP's petitions.  Mr. Hicks declined.  The caller stated that the call was made on behalf of the DSCC.

34.     On or about June 24, 2022, Jenn Truman received a call from someone who asked her to confirm whether she signed NCGP's petitions.  When she did, the caller asked her to remove her name from the petitions because NCGP takes votes from Democrats.  Truman declined and the caller hung up.

35.     On June 24, 2022, Clinton Ebadi received multiple calls from 980-550-5118.  When he answered, the caller asked him to remove his name from NCGP's petitions because NCGP will take votes away from Democrats.  The caller told Ebadi that the caller was calling from "the call center" but would not identify which one.  Ebadi asked on whose behalf the caller was calling, and

the caller stated, "I am not given that information."  Mr. Ebadi also received text messages from 919-887-1940, which asked him to remove his name form NGCP's petitions.  One of the texts included the following link to a document that he could sign electronically to request his removal from the NCGP petitions: https://ncdems.fyi/Sign-To-Revoke-Signature.  That link redirects to another link, https://powerforms.docusign.net/678b1ad3-26f4-4c7a-9cdd-36227080102d?env=na2&acct=1bc70b7c-d708-483c-a3f6-b3fc998cbf12&accountId=1bc70b7c-d708-483c-a3f6-b3fc998cbf12, which currently contains the message, "The document has been suspended and is not currently active. Please contact the sender."

36.    On or about June 24, 2022, Janet Nagel received a call from a woman who stated that she was calling "for" the Green Party and asked whether Ms. Nagel would remove her name from NCGP's petitions.  Ms. Nagel declined.  The caller called from the number 980-550-5066.

37.    On June 24, 2022, Plaintiff Mohammed and his wife both received several phone calls from unrecognized numbers.  Plaintiff Mohammed answered one such call from 980-400-3714.  The caller asked him to remove his name from NCGP's petitions because NCGP would hurt Democrats.  Plaintiff Mohammed was confused because he thought the caller was a representative of NCSBE.  He declined to remove his name.  The caller repeated the request and he declined again.  Before ending the call, the caller identified herself as calling on behalf of the DSCC.  A few days later Plaintiff Mohammed and his wife received several more calls and a text message to his wife asking her to remove her name from the NCGP petitions.  These calls and texts came through the spam blocker on Plaintiff Mohammed's and his wife's phones and they received them all day long, while at work.

38.    On or about June 24, 2022, Kyleene Rooks received a call from the Democratic Party asking her to remove her name from the NCGP petitions.

39.     On June 25, 2022, Plaintiff Hoh received a text from 919-300-8955 asking him to confirm whether he signed NCGP's petitions.  He did, and the texter asked him to remove his name from the petitions.  Plaintiff Hoh declined.  He then received another text from the same number repeating the request and stating that "the Green Party takes votes away from Democrats…."  Plaintiff Hoh again declined.  He then received another text, repeating the request and stating, "we want to make sure the Democratic candidates have the best chance to win this November…."  Plaintiff Hoh again declined.

40.     On or about June 25, 2022, Emily Przykucki received the same text message that Plaintiff Hoh received.  It was sent to her father Mike's phone number.  Mr. Przykucki asked "Are you with the Green Party?"  The texter replied, "We're with the Democratic Senatorial Campaign Committee."

41.     On June 25, 2022, Conner Harney received several texts requesting that he remove his name from NCGP's petitions.  He declined.  He asked who the texts were from and received no response.  At approximately 4:00 PM on June 26, 2022, a woman came to Mr. Harney's door and stated that she represented the State Board of Elections.  The woman asked Mr. Harney to remove his name from NCGP's petitions.  She stated that the Greens would split the Democratic vote in the midterms.  Mr. Harney declined.

42.     On June 26, 2022, Charlie Hammerle received a call from an individual who asked him to remove his name from the NCGP petitions.  Mr. Hammerle asked two or three times if the caller was with the Green Party and the caller responded "Yes" each time.  The call was then abruptly terminated, but not by Mr. Hammerle.

43.     On June 27, 2022, NCGP received an email from Robert Thiel who stated that he and his wife had signed NCGP's petitions and that "We have been contacted by Green Party

12

representatives, and asked them to delete our names." Mr. Thiel was writing to confirm that his name had been removed. He explained that "the reason of my concern is that it would split democratic votes, from the Democratic party and would lead to the Republican party, gaining an edge."

44. On or about June 27, 2022, Plaintiff Ndege received a call from a man who falsely stated that he was a representative of the Green Party. The man asked if Plaintiff Ndege would like to remove his name from the NCGP petitions. Plaintiff Ndege stated that he was confused and asked why a Green Party representative was calling to ask him to remove his name from NCGP's petitions. The call was abruptly terminated, but not by Plaintiff Ndege.

45. On June 27, 2022, a woman came to Chantelle Miles' door and identified herself as a notary hired by the Secretary of State. She asked Ms. Miles to remove her name from the NCGP petitions because the Green Party would take votes from Democrats. Ms. Miles declined. Ms. Miles had previously received a text making the same request on June 22, 2022.

46. On or about June 29, 2022, a person identifying herself as a representative from the North Carolina Democratic Party came to Plaintiff Parker's home and asked him to remove his name from NCGP's petitions. The woman asserted, without citing any evidence, that NCGP had committed fraud in its petitioning effort. Plaintiff Parker declined.

47. On June 29, 2022, Michael Vincent Abucewicz sent a letter to NCSBE "to raise concerns about the sufficiency of information provided to signers" of NCGP's petitions. Mr. Abucewicz asserted that "[a] growing number of signatories to the petitions now swear under penalty of perjury that they were misled by the party's signature gatherers about the petition's purpose." Mr. Abucewicz identified Jacquelyn Lopez of Elias Law Group as his counsel.

48.     Mr. Abucewicz, represented by Elias Law Group, has also filed complaints with NCSBE against the chairs of several county boards of elections.  The complaints allege that the county chairs improperly validated certain signatures on NCGP's petitions.

49.      During the course of NCGP's petition drive, tens of thousands of voters signed NCGP's petitions, and NCGP and Hoh Campaign petition circulators spoke with tens of thousands more North Carolinians in addition to the petition signers.  On information and belief, not one of those citizens filed a complaint with NCSBE or any county board of elections regarding NCGP's petitioning efforts.  On information and belief, only Mr. Abucewicz, represented by the Elias Law Group, has filed such a complaint.

50.     On June 29, 2022, the Hoh Campaign provided NCSBE with written documentation and evidence of Democratic operatives' interference with NCGP's petitioning efforts and the harassment and fraud perpetrated against NCGP's petition signers.  That documentation is attached hereto as Exhibit 1.  Neither the Hoh Campaign nor NCGP has received any response from NCSBE.  Plaintiffs are unaware of any effort by NCSBE to investigate this conduct.

**IV.     A Divided NCSBE Voted on Party Lines Not to Certify NCGP as a New Party Despite NCGP's Compliance With All Applicable Requirements Under State Law**

51.     On June 7, 2022 – the same day that Elias Law Group Attorney Poston requested materials relating to NCGP's petition drive from NCSBE – David Richards, an NCSBE investigator, contacted NCGP via email.  Mr. Richards stated, "We have some questions regarding petitions submitted to several counties."  He requested that an NCGP representative contact him to discuss the matter.

14

52.     At NCGP's request, Mr. Richards provided his questions in writing.  On June 16, 2022, NCGP responded in writing and provided thorough, detailed answers to each question.  NCGP's written response, which incorporates Mr. Richards' questions, is attached hereto as Exhibit 2.

53.     On June 20, 2022 and June 21, 2022, NCGP contacted NCSBE to ask whether it had sufficient information to resolve its inquiries.  NCGP also requested the opportunity to meet with NCSBE investigators to discuss their inquiries and to review any petition signatures at issue.

54.     On June 21, 2022, NCSBE attorney Candace Marshall sent NCGP additional questions.  NCGP provided a detailed and complete written response to those questions on June 22, 2022.  The response included, *inter alia*, the full name, residential address, email address and telephone number of all 28 volunteer petition circulators and 16 petition circulators who were paid by NCGP or the Hoh Campaign.  The response also provided detailed information regarding two petitioning firms that collected a small number of signatures before their contracts were terminated for non-performance.  Additionally, the response identified and provided complete contact information for three subcontractors from one of the firms, which the Hoh Campaign briefly hired for one week from May 11-17, 2022.  The response further provided copies of the contracts it executed with the petitioning firms and the subcontractors.  The response is attached hereto as Exhibit 3.

55.     NCGP fully and voluntarily cooperated with NCSBE at each stage of its inquiry.  NCGP provided all pertinent information and documentation in its possession promptly upon request.  At no time during the course of the inquiry did NCSBE provide NCGP notice of which specific signatures it was investigating or its grounds for investigating any particular signature.  NCSBE did not provide NCGP with notice or opportunity to defend the validity of any signature.

56.     Prior to the June 30, 2022 meeting at which NCSBE intended to consider the certification of NCGP's petitions, NCGP requested that it be permitted to be represented at the meeting. NCSBE advised NCGP that it would be allowed one representative who would be permitted to make a statement at the beginning of the meeting lasting no more than five minutes.

57.     NCSBE convened its June 30, 2022 meeting at 9:00 AM. NCSBE voted to adjourn to an executive session that was not open to the public. When NCSBE ended its executive session and reconvened the meeting, the Chair, Democrat Damon Circosta, asked NCGP's counsel if he had a "brief, five-minute statement" to make. A video of the NCSBE meeting is available at https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2022-06-30/State%20Board%20of%20Elections%20Meeting-20220630%201300-1.mp4 (hereinafter, "NCSBE Meeting") (accessed July 13, 2022).

58.     NCGP's counsel stated that NCGP believed that NCSBE should certify its petitions without further delay, because county boards of elections had validated 15,953 signatures on the petitions, which was 2,088 more valid signatures than the 13,865 required under state law. NCGP's counsel further stated that certification by NCSBE was necessary that day if NCGP was to comply with the July 1st filing deadline set forth in § 163-98. NCGP's counsel stated that if NCSBE members had any reason to believe that NCSBE should not certify NCGP's petitions "forthwith," he would be happy to address them. *See* NCSB Meeting, *supra*, at 1:05:20 – 1:06:58.

59.     No NCSBE member asked NCGP's counsel any question or otherwise responded. *See id.*, at 1:07 – 1:07:17.

60.     NCSBE Chair Circosta next recognized NCSBE staffer Karen Brinson Bell, who presented an overview of the statutory requirements relating to a new party's formation. *See id.* at 1:07:17 – 1:14. Ms. Brinson Bell confirmed that county boards of elections had validated 15,953

16

signatures on NCGP's petitions, which was 2,088 more valid signatures than the 13,865 required. *See id*. at 1:14:30 – 1:15:20. Ms. Brinson Bell stated that certain county boards of elections had identified "irregularities" in the petitions and that NCSBE had opened an investigation and was reviewing every petition sheet. *See id.* at 1:15:20 – 1:15:45. Ms. Brinson Bell also confirmed that some county boards of elections had returned NCGP petitions late – "as late as this week." *See id.* at 1:15:47. Ms. Brinson Bell then presented a summary – without identifying any particular signature or petition page – of the alleged "irregularities" that NCSBE claims to be investigating. *See id*. at 1:15:50 – 1:17:50. According to Ms. Brinson Bell, these alleged "irregularities" created "a cloud over how many signatures are valid." *Id.* at 1:18:00.

61.     Ms. Brinson Bell presented as "an example" a petition sheet containing signatures that the county board of elections did not validate, meaning the signatures on the petition are separate and apart from the 15,953 total signatures that county boards of elections had validated. *See id*. at 1:18:29 – 1:18:43. Ms. Brinson Bell next cited the allegations contained in the complaint filed by Mr. Abucewicz, but did not identify the complainant. *See id.* at 1:19:20 – 1:20:05. Ms. Brinson Bell also omitted any mention of the documentation and evidence of fraud and harassment perpetrated against signers of the NCGP petitions, and of the DSCC's effort to convince signers to withdraw their names from the NCGP petitions, which the Hoh Campaign submitted to NCSBE.

62.     Chair Circosta next recognized NCSBE attorney Candace Love, who cited possible "criminal penalties" that might be implicated by NCSBE's investigation. *See id.* at 1:21:10 – 1:22:15.

63.     When Ms. Brinson Bell and Ms. Love finished their presentations, Republican member Stacy Eggers IV asked how NCSBE's failure to certify NCGP's petitions would impact the July 1 deadline under § 163-98 and the deadline for printing absentee ballots. *See id*. at 1:24:40

17

– 1:25:25. Ms. Brinson Bell confirmed that absentee ballots would be prepared in "mid-August" in preparation for their mailing on September 9, 2022. *See id*. at 1:25:35 – 1:26:03. Ms. Love stated that NCSBE "does not have a deadline" for certifying a new party, but must do it "forthwith" pursuant to § 1163-96(a)(2), and that "there still would be time to get any nominees of the party onto the ballots for the general election." *Id.* at 1:26:28 – 1:27:50. Pressed by Mr. Eggers, however, Ms. Love acknowledged that NCGP and its nominees must comply with the July 1 deadline specified in § 163-98. *See id.* at 1:28:15 – 1:29:02. Ms. Love stated that the July 1 deadline is "provided in the statute" and NCSBE cannot change it. *See id*. at 1:29:19 – 1:29:46.

64.     Mr. Eggers observed that, contrary to NCSBE staffers' representations, "there is indeed prejudice to the Green Party" if NCSBE did not vote to certify NCGP's petitions that day, because "the practical effect is going to be to prevent the Green Party from having candidates that they wish to present." *Id.* at 1:29:00 – 1:29:17; 1:29:53 – 1:30:27.

65.     Republican member Tommy Tucker stated that NCSBE's investigation, in which NCSBE investigators were calling NCGP petition signers to ask them to confirm that they had signed the NCGP petitions, "would scare a lot of people" who would then agree to remove their names from the NCGP petitions. *See id*. at 1:32:57 – 1:34:05. Mr. Tucker observed that NCGP had "met" the statutory signature requirement, "you've got a 2,000-signature spread," and he questioned why NCSBE had invested such "urgency" into verifying signatures validated by county boards of elections when in the 2020 election, "we did not check nary a signature, not one signature, verified by a county board of elections." *Id.* at 1:34:05 – 1:34:38. Mr. Tucker noted that NCSBE had received complaints prepared by the Elias Law Group, "so there must be something advantageous for the Democratic Party not having the Green Party on the ballot." *Id.*

18

at 134:40 – 1:35:12. "I don't understand why we don't certify this," Mr. Tucker stated. *Id.* at 1:35:40 – 1:35:48.

66. NCSBE Chair Circosta stated, "Given what's in front of us today I can't vote to certify today. So I would like to wait and give our staff enough time to go through this process. If there's a motion to vote on this today, I will be voting no." *See id.* at 1:36:55 – 1:37:11.

67. NCGP's counsel asked to be recognized. The following colloquy transpired:

> NCGP Counsel: "Is there any question as to the validity of the 15,953 signatures that have been validated by county boards of elections?"

> Chair Circosta: "I don't want to get into the details of a criminal investigation, but I have questions sufficient in number to be not willing to vote for certification today."

> NCGP Counsel: "I ask the question because the Board is effectively presuming that there is some question as to the validity of those signatures by delaying the certification and possibly rejecting the certification of the Green Party petitions. If there is some presumption here that is operative, the presumption ought to be that validated signatures are valid unless there is some basis for considering them invalid or at least subject to further investigation. So again, the question is, is there any basis for … questioning the validity of any one of those 15,953 validated signatures?"

> Chair Circosta: "Thank you for your comments to the Board. I will stand by my earlier assertion and I will ask any other Board members if they have questions."

> NCGP Counsel: "Mr. Chairman, you have not answered the question."

> Chair Circosta: "[Counsel], you are out of order sir. Go ahead and mute [Counsel] please.

*Id.* at 1:37:15 – 1:38-47.

68. NCSBE then voted on the certification of NCGP's petitions. The two Republican NCSBE members voted in favor of certification, but all three Democratic NCSBE members voted against certification.

19

69. No NCSBE member voting against certification of the NCGP petitions cited any legal authority to deny certification.

70. At no time prior to the hearing, or during the hearing, did NCSBE produce the evidence on which its investigation into NCGP's petitions thus far relied, nor did NCSBE provide NCGP with any opportunity to defend the validity of the signatures on its petitions or the integrity of its petitioning process.

71. NCSBE is apparently continuing its investigation of NCGP's petitions to the present date. NCSBE investigators continue to call and email NCGP's petition circulators and to ask them wide-ranging questions about their petitioning efforts, in some cases asking petition circulators the same questions multiple times, even though they have already answered. NCGP and the Hoh Campaign have directed their petitioners to cooperate with the NCSBE investigators, but NCSBE still has not provided them with the evidence on which its investigation relies or any opportunity to defend the validity of the signatures on the NCGP petitions or the integrity of its petitioning process.

72. Meanwhile, NCSBE continues to invalidate NCGP petition signatures that county boards of elections previously validated. Out of the 15,953 signatures validated by county boards of elections as of NCSBE's June 30, 2022 meeting, NCSBE presently credits NCGP with 15,877 valid signatures.

**NCSBE's Failure to Certify NCGP as a New Party Injures Plaintiffs' Constitutional Rights**

73. NCSBE's failure to certify NCGP as a new party renders it unable to place its nominees on North Carolina's 2022 general election ballot. As a result, Plaintiffs and the other 15,946 voters who signed NCGP's petitions, as validated by county boards of elections, will be denied their right to vote for NCGP's candidates in the 2022 general election. Voters, including

20

Plaintiffs, are also unable to register as NCGP members. All of this harms Plaintiffs' core First Amendment rights as voters, candidates and citizens who wish to grow and develop a new political party in North Carolina.

74. NCSBE's failure to certify NCGP's petitions despite NCGP's compliance with all applicable requirements under state law also harms Plaintiffs' due process rights, because NCSBE has not provided NCGP with any notice of the allegations or evidence pertaining to any specific signature it is investigating or any opportunity to defend the validity of such signatures.

75. Further, on June 30, 2022, NCSBE published a press release announcing that it had voted not to certify NCGP as a new party, which cited "an ongoing investigation into evidence of fraud and other irregularities" in NCGP's petitioning process. *See* North Carolina State Board of Elections, *Amid Investigation, State Board Turns Down Green Party Recognition*, available at https://www.ncsbe.gov/news/press-releases/2022/06/30/amid-investigation-state-board-turns-down-green-party-recognition (accessed July 12, 2022). To this day, NCSBE has never produced that evidence to NGCP or provided it any opportunity to defend itself against such allegations.

76. NCSBE's press release misleadingly characterizes several aspects of NCGP's petitions as "irregularities" even though they are neither illegal nor improper in any way. For instance:

- NCSBE asserts that "[t]he same handwriting [appears] throughout a petition page," but it is not illegal or improper for petition circulators to fill in petition signers' names, addresses, dates of birth or related information;

- NCSBE asserts that "[a]t least three workers were paid by the signature collected," but it is not illegal or improper for petition circulators to be paid by the signature;

- NCSBE asserts that an unspecified number of "[v]oters apparently signed petitions more than once," but voters frequently forget they have already signed a petition and it is not illegal or improper if they accidentally sign it again – the second signature simply does not count;

21

- NCSBE asserts that "[p]etition sheets include deceased voters or voters long-removed from the voter registration files, indicating submission of signature sheets from a past Green Party petition drive," but it is not illegal or improper to die after signing a petition, and Plaintiffs have personal knowledge that at least one petition signer, Siniard Nelson, did so; nor is it illegal or improper to sign a petition after being removed from the voter registration files, and petition drives in North Carolina can extend over a period of several years, because § 163-96(a)(2) does not specify when they must begin;

- NCSBE asserts that "[s]ignature pages identify a long-ago Green Party chair, also indicating submission of outdated signatures," but it is not illegal or improper for a new party to elect a new chair during the course of a petitioning period that may last several years, and § 163-96(a)(2) does not authorize NCSBE to designate signatures as "outdated" on that or any other basis.

*See id.*

77.     On information and belief, NCSBE is presently improperly invalidating signatures that county boards of elections properly validated, without statutory authority for invalidating them.

## CAUSES OF ACTION

### (Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments)

78.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

79.     NCSBE is required to determine the sufficiency of a new party's petitions "forthwith" and to notify the new party's chair of its determination "immediately".     § 163-96(a)(2).

80.     NCSBE's failure to certify NCGP as a new political party, despite NGCP's compliance with all applicable requirements under state law, severely burdens Plaintiffs' First Amendment rights.

81.     NCSBE's failure to certify NCGP as a new political party is not justified by any legitimate or compelling state interest.

82.     NCSBE's failure to certify NCGP as a new political party causes injury to and violates rights guaranteed to Plaintiffs by the First and Fourteenth Amendments.

## CAUSES OF ACTION

### (Violation of Plaintiffs' Rights Guaranteed by the Fourteenth Amendment)

83.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

84.     NCSBE is required to determine the sufficiency of a new party's petitions "forthwith" and to notify the new party's chair of its determination "immediately".   § 163-96(a)(2).

85.     NCSBE's failure to certify NCGP as a new political party, despite NGCP's compliance with all applicable requirements under state law, without providing NCGP with notice or an opportunity to defend the validity of the signatures on its petitions or the integrity of its petitioning process, violates Plaintiffs' right to due process of law.

86.     NCSBE's failure to certify NCGP as a new political party causes injury to and violates rights guaranteed to Plaintiffs by the Fourteenth Amendment.

## PRAYER FOR RELIEF

87.     WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Enter a declaratory judgment holding that NCSBE's failure to certify NCGP as a new political party pursuant to § 163-96(a)(2) is unconstitutional as applied;

B.      Enter an order directing NCSBE to certify NCGP as a new political party entitled to place its candidates on North Carolina's November 8, 2022 general election ballot pursuant to § 163-96(a)(2), with sufficient time to ensure the candidates' inclusion on the ballots to be prepared in mid-August 2022, and enjoining NCSBE from enforcing the July 1 filing deadline under § 163-98 as applied to Plaintiffs;

C.      Award other and further relief as the Court deems proper;

23

D. Award litigation costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

E. Retain jurisdiction over this action and grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper.

Dated: July 14, 2022                                    Respectfully submitted,

/s/ Pooyan Ordoubadi
Pooyan Ordoubadi*
Lopez-Cobb and Ordoubadi, PLLC
134 Salem Towne Court
Apex, NC 27502
Tel: (919) 695-5569
Fax: (919) 882-9797
Email: pooyan@LCOLEGAL.com
N.C. Bar No. 49438

/s/Oliver B. Hall
Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org
D.C. Bar No. 976463

*Counsel for Plaintiffs*
*Local Civil Rule 83.1(d) Counsel*